**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ALLISON HATCH,

    *Plaintiff*,

v.                                                    CASE NO. 13-CV-11839

COMMISSIONER OF                      DISTRICT JUDGE JOHN CORBETT O'MEARA
SOCIAL SECURITY,                       MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**[1]

## I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence does not support the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **GRANTED**, that Defendant's Motion for Summary Judgment be **DENIED**, and that the case be **REMANDED FOR AN AWARD OF BENEFITS**.

## II.    REPORT

### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claims for a period of disability, Disability Insurance Benefits ("DIB"), and for Supplemental Security Income ("SSI") benefits. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 11, 15.)

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

Plaintiff was 23 years of age at the time of the most recent administrative hearing. (Tr. at 35, 688.) Plaintiff's employment history includes work at a pizza restaurant for four months, a cashier at a gas station for one and one-half years, and a sales clerk at retail stores for five months total. (Tr. at 119.) Plaintiff filed the instant claims on September 13, 2010, alleging that she became unable to work on July 7, 2010. (Tr. at 25.) The claims were denied at the initial administrative stage. (Tr. at 45, 46.) In denying Plaintiff's claims, the Commissioner considered organic mental disorders (chronic brain syndrome) as a possible basis for disability. (*Id.*) On December 2, 2011, Plaintiff appeared before Administrative Law Judge ("ALJ") JoErin O'Leary, who considered the application for benefits *de novo*. (Tr. at 25-36, 688-720.) In a decision dated December 30, 2011, the ALJ found that Plaintiff was not disabled. (Tr. at 36.) Plaintiff requested a review of this decision on February 17, 2012. (Tr. at 19.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on February 26, 2013, when, after review of additional exhibits,[2] (Tr. at 561-687), the Appeals Council denied Plaintiff's request for review. (Tr. at 2-4.) On April 24, 2013, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

### B.     Standard of Review

In enacting the social security system, Congress created a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137,

---

[2]In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability"). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting SSR 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a

3

different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006).

### C. Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits ("DIB") program of Title II, 42 U.S.C. §§ 401 *et seq.*, and the Supplemental Security Income ("SSI") program of Title XVI, 42 U.S.C. §§ 1381 *et seq.* Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who

become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work[.]" *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth

5

step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D. ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff met the insured status requirements through September 30, 2010, and that Plaintiff had not engaged in substantial gainful activity since July 7, 2010, the alleged onset date. (Tr. at 27.) At step two, the ALJ found that Plaintiff's rheumatoid arthritis, fibromyalgia, scoliosis, headaches, thyroid disorder, bursitis, gastroesophageal reflux disease, major depressive disorder, and generalized anxiety disorder were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 28-30.) At step four, the ALJ found that Plaintiff had no past relevant work. (Tr. at 34.) The ALJ also found that Plaintiff was 22 years old on the alleged disability onset date and, thus, a younger individual (between the ages of 18 and 49). (Tr. at 35.) At step five, the ALJ found that Plaintiff could perform a limited range of light work. (Tr. at 30-34.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 36.)

### E. Administrative Record

The evidence of record reveals that Plaintiff was treated for low back pain since January 2009, and for headaches, neck and shoulder pain, knee pain and small joint effusion, wrist pain, posterior osteophyte disc complex, and cervical disk disease with radiculopathy. (Tr. at 186, 210-42, 468-529.) Plaintiff was also diagnosed by Michael Stack, M.D., with "mild to moderate" scoliosis and was treated for that and cervical spine pain and radiculopathy. (Tr. at 209, 236-37, 288, 331-69.)

Plaintiff was also treated by Joseph Chatfield, D.O., and Philip Trover, M.D., of the Gratiot Medical Center for the above medical issues beginning in 2010. (Tr. at 248-330, 419-47.)

6

An MRI of the cervical spine taken on July 7, 2010, showed "[n]onspecific straightening /reversal of the normal lordotic curvature[,]" "[m]inimal posterior osteophyte disc complex formation " at C6-7," and scoliosis. (Tr. at 370-71.) An MRI of the left knee taken that same day showed "[s]mall joint effusion." (Tr. at 373.)

On August 17, 2010, Joseph Chatfield, D.O., examined Plaintiff and diagnosed "[h]ead thrust forward position[,] [b]ilateral sacroiliac joint dysfunction, right greater than left," "[f]acet arthropathy," "[c]hronic headache that appears to be cervicogenic," and "[m]yofascial pain syndrome." (Tr. at 180.) On August 30, 2010, lab results indicated a "strong clinical suspicion of rheumatic disease[.]" (Tr. at 312.) On September 17, 2010, Dr. Chatfield noted that Plaintiff's bone density scan was normal. (Tr. at 185.)

On October 25, 2010, Plaintiff was examined by Farukh Anwar, M.D., who diagnosed polyarthralgias and myalgias, fibromylagia, chronic fatigue and pain syndrome, anxiety and mild depression, and obesity and active smoker. (Tr. at 452.) Plaintiff continued to treat with Dr. Anwar. (Tr. at 465-67.)

Plaintiff was examined at the request of Disability Determination Services ("DDS") by Janette Caputo, Ph.D., Psy.D., on February 1, 2011. (Tr. at 396-402.) Dr. Caputo diagnosed Major depressive episode, moderate, in partial remission, pain disorder associated with both psychological factors and a general medical condition, assessed a GAF score of 68, and gave a fair prognosis. (Tr. at 401-02.)

Plaintiff was also treated at Lakeshore Spine and Pain by Tolga Kurst, M.D. (Tr. at 454-64.) On February 14 and 28, 2011, Plaintiff was given bilateral L5-S1 facet injections under direct fluoroscopy. (Tr. at 455-57.)

On March 1, 2011, Dr. Kurst noted that he told Plaintiff that he would not be to give her controlled substances unless she stops using marijuana. (Tr. at 454.)

On May 12, 2011, Plaintiff was treated at Advanced Rheumatology and was diagnosed with rheumatoid arthritis and unspecified inflammatory polyarthropathy. (Tr. at 530-60.)

On September 2, 2011, an MRI of Plaintiff's left hip was normal. (Tr. at 448-49.)

7

A Physical RFC Assessment was completed on January 10, 2011, by M.L. Rees, M.D. (Tr. at 388-95.) The assessment found that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand or walk for about 6 hours in an 8-hour workday, sit for about 6 hours in an 8-hour workday, and was unlimited in her ability to push or pull. (Tr. at 389.) There were no postural, manipulative, visual, communicative or environmental limitations established. (Tr. at 390-93.)

At the administrative hearing, the ALJ asked the Vocational Expert ("VE") to assume a person with Plaintiff's background who is

> limited to light exertional work . . . [and] would be limited to no more than occasional postural maneuvers, such as climbing, balancing, stooping, kneeling, crouching and crawling. They would be unable to do overhead reaching.

(Tr. at 716.) The VE responded that such a person could perform the light, unskilled jobs of hand packager (9,000 jobs available in the State of Michigan), inspector (6,000 available) and assembler (10,000 available).

### F.   Analysis and Conclusions

### 1.   Legal Standards

The ALJ determined that during the time Plaintiff qualified for benefits, she possessed the residual functional capacity to perform a limited range of light work. (Tr. at 30-34.)

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

8

**2.     Substantial Evidence**

Plaintiff contends that the ALJ's decision is not supported by substantial evidence. (Doc. 11.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Specifically, Plaintiff contends that the ALJ erred in assessing Plaintiff's credibility, and in assessing Plaintiff's RFC. (Doc. 11 at 19-24, 27-29.) In addition, Plaintiff argues that the ALJ failed to follow the treating physician rule. (*Id.* at 27.) Plaintiff seeks reversal and an award of benefits, but alternatively seeks remand under sentence six based on new evidence submitted to the Appeals Council. (*Id.* at 29-31.)

Plaintiff argues that the ALJ erred in her assessment of the severity of Plaintiff's symptoms of pain. (Doc. 11 at 19-24.) When a disability determination that would be fully favorable to a claimant cannot be made solely on the basis of the objective medical evidence, an ALJ must analyze the credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p. Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health and Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, No. 09-5773, 2011 WL 180789 at *4 (6th Cir. Jan. 19, 2011) (citing *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001)); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility"); *Krupa v. Comm'r of Soc. Sec.*, No. 98-3070, 1999 WL 98645 at *3 (6th Cir. Feb. 11, 1999) (unpublished). However, "[i]f an ALJ

rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky,* 35 F.3d at 1036.

The social security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529; SSR 96-7p. In order for pain or other subjective complaints to be considered disabling, there must be (1) objective medical evidence of an underlying medical condition, and (2) objective medical evidence that confirms the severity of the alleged disabling pain arising from that condition, or objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain. *See id.*; *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994); *Felisky*, 35 F.3d at 1038-39; *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

Therefore, the ALJ must first consider whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the individual's pain or other symptoms. Secondly, after an underlying physical or mental impairment is found to exist that could reasonably be expected to produce the claimant's pain or symptoms, the ALJ then determines the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work activities. *Id.* Although a claimant's description of his physical or mental impairments alone is "not enough to establish the existence of a physical or mental impairment," C.F.R. §§ 404.1528(a), 416.929(a), "[a]n individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded *solely* because they are not substantiated by objective medical evidence." SSR 96-7p, at *1 (emphasis added). Instead, the ALJ must consider the following factors:

(I)   [D]aily activities;

(ii)  The location, duration, frequency, and intensity of . . . pain;

(iii) Precipitating and aggravating factors;

(iv)  The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;

10

       (v)       Treatment, other than medication, . . . received for relief of . . . pain;

       (vi)      Any measures . . . used to relieve . . . pain.

*Felisky*, 35 F.3d at 1039-40; SSR 96-7p, at *3. Furthermore, the consistency of the evidence, including a claimant's subjective statements, is relevant in determining a claimant's credibility. 20 C.F.R. § 404.1527(c); SSR 96-7p, at *5.

In the instant case, the ALJ thoroughly considered each of the above factors. (Tr. at 22-31.)

"[U]nlike medical conditions that can be confirmed by objective testing, fibromyalgia patients present no objectively alarming signs." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). "They demonstrate normal muscle strength and neurological reactions and can have a full range of motion[.]" *Minor v. Comm'r of Soc. Sec.*, 513 F. App'x 417, 434 (6th Cir. Jan. 24, 2013) (remanding for an award of benefits). The "causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective." *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996).

Here, the ALJ indicated that Plaintiff's "disabling symptoms and pain were all considered in the light most favorable to the claimant. Taking into account these allegations, "the diagnostic findings set forth above, and the claimant's relatively conservative treatment, I find that the claimant's exertional activities are limited to light tasks with the above exceptions in the residual functional capacity." (Tr. at 34.)

In *Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 863-64 (6th Cir. 2011), the Sixth Circuit considered a statement of the reasons for discounting the plaintiff's credibility which was more thorough than those recited by the ALJ in this case. The Sixth Circuit held that "the absence of objective medical evidence to substantiate the diagnosis of fibromyalgia or its severity is basically irrelevant, and more 'aggressive' treatment is not recommended for fibromyalgia patients." *Kalmbach,* 409 F. App'x at 864; *accord, Minor v. Comm'r of Soc. Sec.*, 513 F. App'x 417, 435 (6th Cir. 2013).

In addition, the Sixth Circuit held that evidence that a plaintiff can engage in some minimal daily activities on good days is not comparable to typical work activities, especially where the

11

plaintiff alleges that due to her fibromyalgia, she suffers fatigue and pain "basically all the time" and that further activity "would cause a flare-up in her symptoms." *Id.* Similarly, in the instant case, Plaintiff testified that she can take care of herself and her infant son at times but cannot lift him and needs help with shopping and other chores, and can drive short distances. (Tr. at 705-08.) Plaintiff also indicated to her physicians that her pain was "24 hours, 7 days a week" (Tr. at 186) and she testified that she has headaches "at least five days a week" (Tr. at 707) and has constant pain, with her hip pain being the worst and her knees and back being "very bad" also. (Tr. at 698.) Plaintiff also testified that she is "not experiencing any relief" from her medications. (Tr. at 699.)

In light of the current binding Sixth Circuit precedent, I am compelled to suggest that reversal is required. Based on this analysis, I need not address Plaintiff's remaining issues.

**b.     Remand**

Once it has been determined that the Commissioner's administrative decisions are not supported by substantial evidence, a district court faces a choice. It may either remand the case to the Commissioner for further proceedings or direct the Commissioner to award benefits. The court may reverse and direct an award of benefits if "all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits . . . where the proof of disability is overwhelming or where proof of disability is strong and evidence to the contrary is lacking." *Felisky,* 35 F.3d at 1041; *accord, Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). This comports with the principle that "where remand would be an idle and useless formality, courts are not required to convert judicial review of agency action into a ping-pong game." *Wilson v. Comm'r of Soc. Sec.*, 378 F3d 541, 547 (6th Cir. 2004) (citations omitted).

In this case, for the reasons set forth above, I conclude that there are no unresolved legal or factual issues. The Court in *Kalmbach* reversed and remanded for an award of benefits. I therefore suggest that since the same analysis applies here, *Kalmbach* requires reversal and remand for an award of benefits. Accordingly, I suggest that the ALJ's decision should be reversed and the case remanded for an award of benefits.

12

### III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                                                  s/ Charles E Binder  
                                                  CHARLES E. BINDER  
Dated: April 3, 2014                          United States Magistrate Judge

**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date:  April 3, 2014                        By     s/Patricia T. Morris  
                                                          Law Clerk to Magistrate Judge Binder